BRONSTER CRABTREE & HOSHIBATA
A Law Corporation

MARGERY S. BRONSTER #4750
REX Y. FUJICHAKU #7198
2300 Pauahi Tower
1001 Bishop Street
Honolulu, Hawaii  96813
Telephone:  (808) 524-5644
Facsimile:  (808) 599-1881
mbronster@bchlaw.net
rfujichaku@bchlaw.net

WOODLEY & McGILLIVARY
THOMAS A. WOODLEY
GREGORY K. McGILLIVARY
DAVID W. RICKSECKER
1125 15th Street, N.W.
Washington, D.C.  20005
Telephone:  (202) 833-8855
Facsimile:  (202) 452-1090
taw@wmlaborlaw.com
gkm@wmlaborlaw.com
dr@wmlaborlaw.com

Attorneys for Plaintiffs

| | |
|---|---|
| TRINIDAD K. ALCONCEL, et al | ) CIVIL NO. 05-00280 SPK/BMK |
| | ) |
| Plaintiffs, | ) Memorandum of Law in |
| | ) Support of Plaintiffs' |
| | ) Opposition to Defendant's |
| vs. | ) Motion for Summary Judgment |
| | ) As to the Interpretation |
| COUNTY OF MAUI,  HAWAII | ) and Application of the |
| Defendant. | ) Credits Available Under 29 |
| | ) U.S.C. 207(h) |
| _____ | ) |

# TABLE OF CONTENTS

I.   Introduction ........................................................................................1

II.  Summary Judgment Standard ..................................................................1

III. Argument ...........................................................................................2

   A. The FLSA Does Not Permit the Employer to Receive a
      Declaratory Judgment That Its Interpretation of the FLSA
      Is Proper .........................................................................................2

   B. The County's Interpretation of Offsets and Credits
      Under the 207(h) of the FLSA is Flawed ............................................6

      1. General Background of 207(h) ......................................................6

      2. The Meager Evidence the County Offers Fails
         To Demonstrate Compliance With the FLSA ...............................8

         a.  Temporary Assignment Overtime Set Off .................................10

         b.  Nigh Shift Differential Set Off ...................................................13

         c.  The County's Minimal Explanation of How
             it "Interprets" and "Applies Credits to the FLSA
             Regular Rate is Inconclusive and Impossible to
             Determine From the Facts Presented .........................................14

      3. The County Is Not Permitted to Use 207(h) or 207(e)(5)-(7)
         Credits to Set Off Overpayments Against Underpayments ...........15

         a. The County Is Not Permitted to Use 207(h) or
            207(e)(5)-(7) Credits to Set Off Underpayments in
            Different Work Weeks ..............................................................15

         b. The County is Not Permitted to Use 207(h) or
            207(e)(5)-(7) Credits to Set Off Uncompensated Work
            Hours ....................................................................................19

VI.   Conclusion.........................................................................................20

# TABLE OF AUTHORITIES

## FEDERAL CASES

Abbott Laboratoriess v. Gardner,
    387 U.S. 136 (1965) ............................................................................6

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) .......................................................................1, 2

Ballaris v. Wacker Silitronic, 370 F.3d 901 (9th Cir. 2004) ............................19

Bell v. Iowa Turkey Growers Cooperative,
    407 F.Supp.2d 1051 (S.D.IA. 2006) .......................................................16

Biggs v. Wilson, 1 F.3d 1537 (9th Cir. 1993) ................................................15

Brillheart v. Excess Insurance Co.,
    316 U.S. 491 (1942) ............................................................................5

Brooklyn Savings Bank v. O'Neil,
    324 U.S. 697 (1945) ..........................................................................15

Calderon v. Witvoet, 999 F.2d 1101 (7th Cir. 1993) .......................................16

Chao v. A-One Medical Services,
    2001 U.S.Dist. LEXIS 25320 (W.D.Va. 2001) ........................................2

Harold Levinson Associates V. Chao,
    2002 U.S.App. LEXIS 9796 (2nd Cir. 1998) ..........................................16

Herman v. Fabri-Centers of America, Inc,
    308 F.3d 580 (6th Cir. 2002) ..........................................................16, 18

Howard v. City of Springfield,
    274 F.3d 1141 (7th Cir. 2001) ...................................................15, 16, 17

Matsushita Electric Industrial Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986) ............................................................................2

Monahan v. County of Chesterfield, Virg.,
    95 F.3d 1263 (4th Cir. 1996) ...................................................................15

Nolan v. City of Chicago,
    125 F.Supp.2d 324 (N.D. Ill. 2000) .........................................................18

Rogers v. City of Troy, New York,
    148 F.3d 52 (1998) ...................................................................................16

Tejidos Konfort, Inc. v. McAuliffe,
    290 F.Supp. 748 (D.P.R. 1968) ..................................................................4

Weaver v. City & County of San Francisco,
    2006 U.S.Dist. LEXIS 62650 (N.D. Ca. 2006).........................................2

## FEDERAL REGULATIONS

29 C.F.R. § 778.104 .......................................................................................17

29 C.F.R. § 778.106 .......................................................................................17

29 C.F.R. § 778.202 ..................................................................................15, 16

29 C.F.R. § 778.223 .......................................................................................19

29 C.F.R. § 778.315 .......................................................................................19

29 C.F.R. §778.419 ........................................................................................10

## STATUTES

28 U.S.C. §§2201-2201 ...................................................................................3

29 U.S.C. § 207   ..........................................................................................1

29 U.S.C. §217  ............................................................................................4

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AS TO THE INTERPRETATION AND
APPLICATION OF THE CREDITS UNDER 29 U.S.C. 207(h)**

## I.    INTRODUCTION

Plaintiffs Trinidad Alconcel, *et al*., respectfully submit this

memorandum of law in opposition to the defendant's motion for partial

summary judgment.  The defendant's motion is improper; as it is seeking a

Declaratory Judgment, relief that is unavailable to private parties under the

Fair Labor Standards Act (FLSA).  In addition, as demonstrated below, there

are numerous and genuine issues of material fact and legal authority

regarding the defendant's claim that it has properly interpreted, adopted, or

utilized credits under 29 U.S.C. 207(h).

## II.    Summary Judgment Standard

Summary judgment is only available if no genuine issue of material

fact exists, and if the moving party is entitled to judgment as a matter of law

based on the uncontested facts.  Fed. R. Civ. P. 56(c). The court must

determine whether "there are any genuine factual issues that properly can be

resolved only by a finder of fact because they may reasonably be resolved in

favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986)(emphasis supplied).  A fact question is "material" if it would "effect

the outcome of the suit under the governing law." Anderson, 477 U.S. at

248; Chao v. A-One Med. Servs., 2001 U.S. Dist. LEXIS 25320 (W.D. Wa.

2001). A dispute about a material fact is "genuine" if the evidence is such

that a reasonable jury could return a verdict for the non-moving party.

Weaver v. City & County of San Francisco, 2006 U.S. Dist. LEXIS 62650 (

N.D. Ca. 2006). ***"Inferences to be drawn from the underlying facts must
be viewed in the light most favorable to the party opposing the motions."***

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88

(1986) (emphasis supplied). Here, incredibly, the County is not moving

based on any actual facts, but instead is seeking a declaratory judgment on

its interpretation of the FLSA. A declaratory judgment is not only improper

under a motion for summary judgment, declaratory judgments are

unavailable in FLSA actions, accordingly, the County's motion must be

denied without further review.

## III. Argument

### A. The FLSA Does Not Permit the Employer to Receive a Declaratory Judgment that Its Interpretation of the FLSA is Proper

The County is not "seeking a factual determination as to whether

specific premium payments have been or may be properly taken and/or

applied as credits toward any specific FLSA obligation. Furthermore, the

County is not proposing that the Court rule, at this time, that Plaintiffs received all sums to which they are entitled under the FLSA. The County is seeking an order confirming that its interpretation and application of §207(h), and all underlying provisions, is consistent with, and satisfies, the requirements of the FLSA." <u>See</u> Defendant's Brief, pp. 1- 2.  Simply put, the County is seeking a declaratory judgment.

A declaratory judgment is a judgment of a court in a civil case which declares the rights, duties, or obligations of each party in a dispute. A declaratory judgment is binding as to the duties, rights and obligations of the parties. A declaratory judgment, however, does not order any action or result in any award of damages to any party to the case.  <u>See generally</u>, BLACKS LAW DICTIONARY, 6TH EDITION (1999).

In every case involving a request for a declaratory judgment, the moving party must also show an independent basis of jurisdiction.  The Declaratory Judgment Act, 28 U.S.C. §§2201-2201 is procedural only, *i.e.*, it provides a remedy where jurisdiction exists but does not extend subject matter jurisdiction.  The FLSA only affords a jurisdictional basis for a declaratory judgment action in certain cases.  For example, the FLSA confers jurisdiction in enforcement actions brought by employees or the Secretary of Labor, but contains no jurisdictional basis for employer actions

to establish exemptions. <u>Compare,</u> 29 U.S.C. §216(b) (authorizing actions by employees against employers only for unpaid minimum wages, overtime payments, liquidated damages, and attorneys fees) and 29 U.S.C. §217(jurisdiction for injunctive proceedings) <u>with</u> <u>Tejidos Konfort, Inc. v. McAuliffe</u>, 290 F. Supp. 748, 751 (D.P.R. 1968)(questions of exemption under FLSA determinable in actions brought by Secretary of Labor and not in Declaratory Judgment Act proceedings); <u>Glass v. Martin</u>, 119 Lab. Case ¶35,495 (E.D. AR 1991) (trial court dismissed employer's actions against Secretary for declaration of noncoverage under FLSA).

Here, the employer is seeking a declaratory judgment that its interpretation and sample application of §207(h), and all underlying provisions, is consistent with, and satisfies, the requirements of the FLSA. The County is not seeking a "factual determination as to whether specific premium payments have been or may be properly taken and/or applied as credits toward any specific FLSA obligation." See County's Brief.  The County is seeking a declaratory judgment, asking the Court to issue an interpretation of the regulations without applying *any* actual facts.  Such a declaratory judgment for an employer is not permitted under the FLSA, and should be dismissed.

In the event that the Court determines that it has jurisdiction to issue a declaratory judgment, the plaintiffs respectfully request this Court exercise its discretion and not issue such an order.  Declaratory relief is not a mandatory remedy, and a trial court possesses discretion to make a declaration of rights but is not compelled to do so.  See Abbott Labs. v. Gardner, 387 U.S. 136, 155 (1965); Brillheart v. Excess Ins. Co., 316 U.S. 491, 494 (1942).  The plaintiffs see no need to issue a speculative ruling on how the County should or could have interpreted 207(h).  The plaintiffs are concerned about the facts and what *actually* was done to deprive the plaintiffs of the overtime pay to which they are entitled under the FLSA. Simply because the County presented a worksheet as to how it "thinks" FLSA overtime should be calculated and compensated is irrelevant to the issue of whether the County failed to perform proper calculations for every plaintiff, and failed to pay proper FLSA overtime compensation to the plaintiffs according to its own worksheet submitted as Exhibit A, which itself is based on flawed interpretation.  A mere theoretical analysis of whether or not the County's current interpretation of the FLSA, as set forth in its brief, will have little to no value for paring down the outstanding issues for trial or for settlement purposes.  What is important is what the County

actually did, not what it "theoretically believed." The Court should not issue such a speculative, discretionary order.

**B.      The County's Interpretation of Offsets and Credits Under 207(h) of the FLSA is Flawed**

In the event the Court determines that it is proper to issue a declaratory judgment in this issue, the plaintiffs must counter and clarify certain aspects of the County's argument that it is entitled to a blanket credit or offset under 207(h).

Certain premium payments that have been made by an employer can reduce the employer's obligation under the FLSA.  The defendant's interpretation, however, regarding set offs and credits under the FLSA suffers from numerous flaws.  First, set offs and credits can not be applied to work performed in different work weeks.  Second, employers are not permitted to use credits or set offs under 207(h) to offset uncompensated work hours. Finally, the facts presented do not even support the County's own interpretation.

**1.      General Background of 207(h)**

The FLSA permits an employer to credit some payments against certain overtime owed. It may do so, however, only where a specific statuory provision authorizes an off set or set off.  Specifically, 29 U.S.C. § 207(h)(2) provides that "extra compensation paid as described in paragraphs (5), (6),

and (7) of subsection (e) of this section shall be creditable towards overtime compensation payable pursuant to this section." Those subsections include:

> (5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) of this section or in excess of the employee's normal working hours or regular working hours, as the case may be;

> (6) extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days; or

> (7) extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employee contract or collective-bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding eight hours) or workweek (not exceeding the maximum workweek applicable to such employee under subsection (a) of this section), where such premium rate is not less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek.

If a contractual payment does not fall within one of these categories, it can not be used to offset the regular rate for the calculation of FLSA overtime.

In Section III.A.1; 2 and 3 of its brief, the County presents an outline of legal authorities explaining §207(h) and §§207(e)(5)-(7).  <u>See</u> Defendant's Brief, pp. 5 – 17.  The County generally outlines three types of premium payments it believes it can use to set off any FLSA overtime

liability. Those are premium pay for hours worked in excess of eight hours a day or in excess of an employee's normal or regular work schedule; extra compensation for work performed on Saturdays, Sundays, and other special days; and extra compensation for hours worked outside a contractual schedule. The County fails, however, to explain how these statutory provisions entitle it to offset its FLSA pay obligations.

In Section III.B., the County makes one feeble attempt to explain the method that it takes and applies credits towards its FLSA obligation. The County attaches a single example of a worksheet it alleges the County uses to calculate FLSA credits and the regular rate. <u>See</u> Defendant's Exhibit A. This worksheet was allegedly prepared for plaintiff Trinidad Alconcel contemporaneously with the pay period, but there is no evidence demonstrating when it was actually completed, or who performed the calculations on the worksheet.

**2.** **<u>The Meager Evidence the County Offers Fails to Demonstrate Compliance with the FLSA</u>**

The sole evidence the County presents in support of its motion is a "worksheet," attached as Defendant's Exhibit A, which the County contends shows how it performs FLSA overtime computations. Significantly, the County does not ever state that it actually completes such a calculation for every employee. Indeed, it does not. <u>See</u> Takahashi Deposition p. 25- 26 .

The County has also not produced such worksheets for the plaintiffs through the discovery process, besides a blank sample worksheet and the copy attached as Exhibit A, although it is clearly responsive to the plaintiffs' request for production of documents.  This is the first and only FLSA Computation worksheet completed for an actual individual ever provided to the plaintiffs.  In addition, there is no indication of when this form was actually completed (during that pay period or post hoc in preparation for this motion) nor who actually completed the worksheet.  Finally, although this FLSA Computation worksheet is allegedly performed for Mr. Alconcel, there is no evidence that he was ever paid what was owed, or even a detailed explanation of what is represented on the worksheet.

The County provides no explanation of how it calculates its alleged FLSA set off.  The County only states that "the sum of these premium payments—which reflects the total 207(h) credit—is recorded on line 8 of the Worksheet."  Defendant's Brief, p. 19.  The County offers no explanation of how this amount is actually calculated, what is included or excluded, or how it is determined.  The County merely presents a mysterious calculation that it proffers represents premium payments made to the employee.  It does not explain, or attempt to explain what the numbers in line 8 of the worksheet actually represent.  Therefore, it is impossible to

know or understand what the County is arguing that it is actually calculating as its alleged FLSA set off. The plaintiffs, however, have attempted to recreate Mr. Alconcel's work and what he was paid to understand the worksheet submitted.

### a.   Temporary Assignment Overtime Set Off

From the worksheet submitted, it appears that the County properly includes temporary assignment pay in the regular rate for FLSA overtime. The County, however, inexplicably takes a credit for overtime hours worked by plaintiff Alconcel at that higher, temporary assignment hourly rate. Under section 7(g)(2), an employee who performs two or more different kinds of work for which different straight time hourly rates are established may agree with the employer in advance that he or she will be paid during overtime hours at a rate not less than the 1 ½ the hourly nonovertime rate established for the type of work he or she is performing during overtime hours. See 29 C.F.R. 778.419.  To qualify for this, the overtime hours ***must qualify as overtime hours under the FLSA***.  See §778.419.  The County is obviously utilizing this provision of the FLSA.  This payment does ***not*** represent ***contractual premium overtime*** payment, but simply the required overtime payment under the FLSA.  Once the County uses this provision of the FLSA as payment for a different type of work at a higher rate for

10

overtime work is what is required under the FLSA. This is the rate at which overtime must be paid under the FLSA. The County cannot then use this high rate to offset its other FLSA overtime pay obligations.

For example, in Exhibit A, the calculation shows no contractual overtime paid at plaintiff Alconcels' hourly rate ($16.06). The only contractual overtime earned by Mr. Alconcel apparently was paid at a higher hourly rate ($17.34). When compared to Mr. Alconcel's pay records, this higher hourly rate represents a temporary assignment pay rate. This does not appear to be payments made for contractual overtime at all, but FLSA overtime payments for hours worked over the FLSA threshold—*i.e.* 12.25 hours.(183.25 hours minus 171 hour threshold). This is payment for FLSA overtime at the temporary assignment hourly rate, permitted under 29 U.S.C. 207(g)(2) ***not contractual overtime***.

In addition, line 8 shows 14.25 hours worked at half time of $0.55. While this appears to be half time of a night shift differential, Mr. Alconcel's pay records do not reflect that he was actually paid for 14.25 hours of night differential overtime at all. See Plaintiff Exhibit A, Pay Data. Thus, using the only example provided by the County as Exhibit A, the FLSA set off taken on line 8 appears to be unwarranted, unpaid, and not permitted to set off the FLSA overtime owed to Mr. Alconcel. **Thus, the single example of**

**an FLSA Computation worksheet submitted by the County does not even include contractual overtime under 207(e)(5) –(7).**

In the one example given by the County, the straight rate for overtime purposes for Mr. Alconcel is $17.34, not $16.06 an hour.  To comply with the FLSA, the County should calculate the regular rate using $17.34, not $16.06 as the hourly rate, and perform the same calculation, with the exception that temporary assignment should no longer be included in Step 4 of the FLSA computation.

In this particular example, *every* hour represented on this worksheet worked by Mr. Alconcel was at the higher, temporary assignment rate of $17.34.  Thus, the amount owed remains the same.  This issue becomes more complicated, however, should the employee work two different rates in the same period. Since the County is not seeking a factual determination on this issue, the plaintiffs can only speculate and hypothesize, but assume officer Alconcel worked 92.25 hours at the $16.06 rate, and 91 hours at the $17.34 rate.  Assume that 12.25 hours of overtime were worked at the $16.06 rate.  Therefore, under the FLSA, Worksheet A would presumably appear like this:

1.    Total Hours Worked              183.25
2.    Maximum FLSA hours       171
3.    FLSA OT hours              12.25
4.    Adjustments to Hourly Rate

|  | Night Diff. | 15.54 | 0.55 | 28.25 |  |
|---|---|---|---|---|---|
|  | Meals | 54.25 |  |  |  |
|  | Temporary Assng. | 116.48 |  | 1.28 | 91 |
|  | SOCD | 75.00 |  |  |  |
|  | Total Adjustments | $261.27 |  |  |  |
| 5. | Divide (4) by (1) | $ 1.43 |  |  |  |
| 6. | Add (5) to hourly rate | $17.49 |  |  |  |
| 7. | Multiply (6) by 0.5 by (3) | $107.13 |  |  |  |
| 8. | $16.06 x .5 x 12.25 = | $98.37 |  |  |  |
|  | $.55 x .5 x 14.25 = $3.92 |  |  |  |  |
|  |  | $102.29 |  |  |  |

Thus, in this case, he would be owed an additional $4.84.  There is no evidence provided demonstrating how the County would calculate premium overtime under 207(e)(5)-(7) in this situation.

### b.      Night Shift Differential Set Off

It is unclear why the County took 14.25 hour credit for overtime owed on Mr. Alconcel's night shift differential.  <u>See</u> Exhibit A, row 8.  According to Exhibit A, Mr. Alconcel only worked 12.25 hours of overtime total.  In addition, when reviewing his pay records, from 8/10/03 through 9/06/03 work period, Mr. Alconcel was only paid 4 hours of the night shift differential overtime.  <u>See</u> Plaintiffs Exhibit A.  Thus, the actual sample calculation is inaccurate and the entire methodology suspect.

### c.      The County's Minimal Explanation of How It "Interprets" and "Applies" Credits to the FLSA

## Regular Rate is Inconclusive and Impossible to Determine From the Facts Presented

The Court should not give any weight to the "worksheet" provided by the County regarding how it allegedly interprets the FLSA. The reality, is reflected in Plaintiff Alconcel's pay records (Plaintiffs' Exhibit A) when compared with Defendant's Exhibit A. The numbers simply do not add up. More troubling, according to the records provided, Mr. Alconcel only received FLSA payments on three occasions since 2003. Plaintiffs' Exhibit A. How the County calculates FLSA overtime or applies FLSA credits is further complicated when compared, for example, with Plaintiff Becraft's recent pay stubs. See Plaintiffs' Exhibit B (paying him $864.54 FLSA overtime in one pay period). In reality, overtime payments made by the County do not hold any relation between the hours worked, premium pay, credits or any other conceivable basis under the FLSA. The County's interpretation of the FLSA computation that it posits to the Court in the form of a request for declaratory ruling bears no relation to the reality of how it actually performs FLSA computations and FLSA overtime payments owed its employees. Accordingly, it should be soundly rejected.

3.       **The County is Not Permitted to Use 207(h) or 207(e)(5)-(7) Credits to Set Off Overpayments Against Underpayments**

a.       **The County is Not Permitted to Use 207(h) or 207(e)(5)-(7) Credits to Set Off Underpayments in Different Work Weeks**

The language of the statute provides that those premium payments are creditable "towards overtime compensation payable pursuant to this section." Because the statute contemplates that overtime will be paid and calculated on a pay period basis, it is consistent with that language to calculate and apply credits in the same manner. See also 29 C.F.R. § 778.202(c) (credits may be given for daily compensation "against the overtime compensation which is due under the statute for hours in excess of 40 in that workweek").

To the extent they are allowed, premium pay credits should only offset overtime liabilities that accrued in the same work week. See Howard v. City of Springfield, 274 F.3d 1141 (7th Cir. 2001). The credit provision must be read in the context of the statute as a whole, which is designed to protect workers from the twin evils of excessive work hours and substandard wages. Barrentine, 450 U.S. at 739; Monahan v. County of Chesterfield, Virg., 95 F.3d 1263, 1267 (4th Cir. 1996). Toward that end, the statute requires the payment of time and a half for overtime work. Courts have long interpreted the FLSA as requiring that those payments be timely made.

Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 703-07 (1945); Biggs v. Wilson, 1 F.3d 1537 (9th Cir. 1993) (holding that the FLSA requires prompt payment of overtime wages); Calderon v. Witvoet, 999 F.2d 1101, 1107 (7th Cir. 1993); Rogers v. City of Troy, New York, 148 F.3d 52, 55 (2d Cir. 1998). Thus, the statute is violated even if the employer eventually pays the overtime amount that was due. See id.

The argument that defendants can offset one week's contractually required "overpayment" against another week's statutory underpayment should not be allowed by the Court. Harold Levinson Assocs. V. Chao, 2002 U.S. App. LEXIS 9796 (2nd Cir. 2002) (rejecting defendants' argument that purported "overpayments" of overtime in certain weeks should offset their liability for other weeks); Howard v. City of Springfield, 274 F.3d 1141, (7th Cir. 2001) (disallowing credits across pay periods and observing that applying credits cumulatively would allow employers to manipulate overtime payments to suit their economic concerns); Herman v. Fabri-Centers of Am., Inc, 308 F.3d 580, 590 (6th Cir. 2002)(disallowing credits across pay periods to offset total liability);Bell v. Iowa Turkey Growers Coop., 407 F. Supp.2d 1051, (S.D. IA 2006) (same); 29 C.F.R. §778.202(c) (employer may credit excess payment "against the overtime compensation

16

which is due under the statute for hours in excess of 40 *in that workweek"*).

Defendants are not entitled to this claimed offset.

That principle is also found at 29 C.F.R. § 778.106, which provides:
the general rule is that overtime compensation earned in a particular
workweek must be paid on the regular pay day for the period in which such
workweek ends. When the correct amount of the overtime compensation
cannot be determined until some time after the regular pay period, however,
the requirements of the FLSA will be satisfied if the employer pays the
excess overtime compensation as soon after the regular pay period as is
practicable. Payment may not be delayed for a period longer than is
reasonably necessary for the employer to compute and arrange for payment
of the amount due and in no event may payment be delayed beyond the next
payday after such computation can be made. Therefore, under the statute,
overtime generally must be calculated and paid on a pay period by pay
period basis. Any method of payment that would allow the County to pay its
overtime obligations at a time far removed from when that overtime amount
was due is inconsistent with the statutory requirement that overtime
payments must be timely made. See Howard v. City of Springfield, 274 F.3d
1141 (7th Cir. 2001).

Other regulations similarly point to that conclusion. For instance, 29 C.F.R. § 778.104 provides that an employer may not average the number of hours worked over two weeks in order to avoid paying overtime. Therefore, if an employee works 20 hours one week and 60 the next, the employer owes overtime in the second week even though the two weeks average to 40 hours each. Just as that averaging would constitute an end-run around the overtime requirement, any attempt to apply credits whenever paid to all overtime liability attempts to accomplish the same result. See Howard v. City of Springfield, 274 F.3d 1141 (7th Cir. 2001). Accordingly, this Court should not allow a blanket application of all premium payments to all overtime liabilities. See also, Levinson v. Chao; 37 Fed. Appx. 19, (2nd Cir. 2002)(holding that since the Fair Labor Standards Act contemplates that overtime will be paid and calculated on a pay period basis, it is consistent with that language to calculate and apply credits in the same manner); Nolan v. City of Chicago, 125 F. Supp. 2d 324, 331 (N.D.Ill. 2000)(holding that offsets for overtime paid applies on a pay period basis); Anderson v. North Roanoke Vet. Clinic; 1997 U.S. Dist. Lexis 1336 (WD VA 1997) (finding that an employer can not claim payment in excess of requirements in one week as a credit against payment in other weeks which did not equal statutory requirements); Herman v. Fabri-Ctrs. of Am., Inc., 308 F.3d 580,

18

590 (6th Cir. 2002) (rejecting employers' argument that "extra

compensation" can be credited against *any* overtime liability due under the

FLSA).

### b.   The County is Not Permitted to Use 207(h) or 207(e)(5)-(7) Credits to Set Off Uncompensated Work Hours

One of the principal purposes of the FLSA is to ensure that employees

are provided appropriate compensation for ***all*** hours worked. See, e.g., 29

C.F.R. § 778.223 ("Under the Act an employee must be compensated for all

hours worked."); 29 C.F.R. § 778.315 ("In determining the number of hours

for which overtime compensation is due, all hours worked . . . by an

employee for an employer in a particular workweek must be counted . . . .

Extra compensation for the excess hours of overtime work under the Act

cannot be said to have been paid to an employee unless all straight time

compensation due him for the non-overtime hours under his contract

(express or implied) or under any applicable statute has been paid.").

The County is not permitted to use any 207(e)(5)-(7) credits to set off

uncompensated work performed by plaintiffs.  For example, in a Ninth

circuit decision, an employer argued that it could simply credit payments

made to the employees and did not have to actually compensate the plaintiffs

for uncompensated work performed.  See Ballaris v. Wacker Silitronic, 370

F.3d 901 (9th Cir., 2004). The Court held that this was not permitted under

the FLSA.  Although the Court in <u>Ballaris</u> was concerned with payments

made for time not treated as hours worked, it briefly addresses 207(h) or

207(e)(5)-(7).  The Court stated that while payments under this provision of

the FLSA can be credited against certain overtime payments, it would

undermine the purpose of the FLSA if an employer could use agreed upon

compensation for work time as a credit so as to avoid compensating

employees for all actual hours worked.  <u>See</u> <u>Ballaris v. Wacker Silitronic</u>, at

914.  The plaintiffs request that the Court adopt the rationale in <u>Ballaris v.</u>

<u>Wacker Siltronic</u>, and not permit the County to offset any uncompensated

overtime worked by the plaintiffs to be offset by the credits permitted under

29 U.S.C. 207(e)(5) – (7).


## VI.    CONCLUSION

Accordingly, for the reasons and authorities set forth above, Plaintiffs

respectfully submit that the Defendants' Motion for Summary Judgment

must be denied.

Respectfully submitted,

DATED:  Washington, D.C.,   <u>      January 22, 2007</u>


<u>s/ Gregory K. McGillivary  </u>
THOMAS A. WOODLEY
GREGORY K. McGILLIVARY
DAVID RICKSECKER
Attorneys for Plaintiffs


MARGERY S. BRONSTER
REX Y. FUJICHAKU
Attorneys for Plaintiffs

21